1
2
3
4
5
6
7
8  **UNITED STATES DISTRICT COURT**
9  **CENTRAL DISTRICT OF CALIFORNIA**
10

11  DAVID D.,[1]

    No. 2:24-cv-10208-AJR
12          Plaintiff,

    **MEMORANDUM DECISION**
    **AND ORDER**
13      v.

14  FRANK BISIGNANO,[2]
    Commissioner of Social Security,
15
            Defendant.
16
17
18                          **I.**
19                  **INTRODUCTION**
20      David D. ("Plaintiff") brings this action seeking to overturn the decision of
21  the Commissioner of Social Security (the "Commissioner" or "Defendant") denying
22  his application for Supplemental Security Income ("SSI").  The parties consented,
23  pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States
24

25      [1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil
    Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
26  Administration and Case Management of the Judicial Conference of the United
    States.
27
        [2] Commissioner Frank Bisignano is substituted in as the Defendant in this action
28  pursuant to Federal Rule of Civil Procedure 25(d).

Magistrate Judge.  (Dkt. 4, 5, 6.)  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

## PROCEDURAL HISTORY

On May 23, 2017, Plaintiff filed applications for SSI and Disability Insurance Benefits ("DIB"), alleging disability commencing November 1, 2010.  (Dkt. 7-6 at 2-3.)  The Commissioner denied the claims on November 7, 2017.  (Dkt. 7-5 at 4, 10.)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  (Id. at 16-19.)  On May 21, 2019, ALJ Paul Colter conducted a hearing and subsequently published a favorable decision, finding Plaintiff disabled as of October 5, 2018.  (Dkt. 7-3 at 56-69; 7-4 at 33-41.)  On July 29, 2019, the Appeals Council issued a notice of its review of the ALJ's decision, finding there were errors of law and the actions, findings, or conclusions of the ALJ were not supported by substantial evidence.  (Dkt. 7-5 at 73-79.)  On April 1, 2020, the Appeals Council remanded the case for further proceedings with instructions, including allowing Plaintiff to reconsider an amendment to his alleged onset date and "obtain an updated consultative medical examination, if available, with medical source statement(s) about what the claimant can still do despite the impairments."  (Dkt. 7-4 at 44-48.)

On January 22, 2021, ALJ Josephine Arno (the "ALJ") conducted a second hearing and, on February 26, 2021, issued an unfavorable decision denying Plaintiff's application.  (Dkt. 7-3 at 16-28, 36-53.)  Plaintiff filed a request for review of the ALJ's decision by the Appeals Council.  (Dkt. 7-5 at 139-41.)  On September 23, 2021, the Appeals Council denied Plaintiff's request for review. (Dkt. 7-3 at 2-7.)  On November 4, 2021, Plaintiff filed a civil action in this district (5:21-cv-01867-SB-SK).  (Dkt. 7-11 at 29-30.)  On June 1, 2023, the U.S. District

Court issued an Order and Judgment reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  (Id. at 31-52.)  Thereafter, the Appeals Council issued an order remanding the case to the ALJ.[3]  (Id. at 54-56.)

On April 16, 2024, the ALJ conducted a third hearing and subsequently published an unfavorable decision on July 26, 2024.[4]  (Dkt. 7-10 at 10-29, 38-69.) On that date, the ALJ's decision became the final decision of the Commissioner. See 42 U.S.C. § 405(h).  Plaintiff now seeks review of the ALJ's final decision.

### III.
### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

---

[3] In the remand order, the Appeals Council noted that Plaintiff had been found disabled as of February 2, 2022, in a subsequent claim for SSI, and affirmed the determination after that date; "However, the period prior to February 2, 2022 requires further adjudication."  (Dkt. 7-11 at 56.)

[4] At the hearing Plaintiff amended the alleged onset date to May 23, 2017, and, as a result, voluntarily withdrew his request for a hearing regarding his DIB benefits.  (Dkt. 7-10 at 10-11, 42-43.)  Thereafter, the ALJ dismissed Plaintiff's claim for DIB and proceeded solely on his claim for SSI.  (Id. at 11.)

(1)    Is the claimant presently engaged in substantial gainful activity?  If so,
the claimant is found not disabled.  If not, proceed to step two.

(2)    Is the claimant's impairment severe?  If not, the claimant is found not
disabled.  If so, proceed to step three.

(3)    Does the claimant's impairment meet or equal one of the specific
impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?
If so, the claimant is found disabled.  If not, proceed to step four.

(4)    Is the claimant capable of performing his past work?  If so, the claimant
is found not disabled.  If not, proceed to step five.

(5)    Is the claimant able to do any other work?  If not, the claimant is found
disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-
54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

        The claimant has the burden of proof at steps one through four and the
Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.
Additionally, the ALJ has an affirmative duty to assist the claimant in developing
the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant
meets their burden of establishing an inability to perform past work, the
Commissioner must show that the claimant can perform some other work that exists
in "significant numbers" in the national economy, taking into account the claimant's
residual functional capacity ("RFC"), age, education, and work experience.  Tackett,
180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1),
416.920(g)(1).  The Commissioner may do so by the testimony of a vocational
expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20
C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").
Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has
both exertional (strength-related) and non-exertional limitations, the Grids are

inapplicable and the ALJ must take the testimony of a VE.  Moore v. Apfel, 216
F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th
Cir. 1988)).

## IV.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded
that Plaintiff was not disabled within the meaning of the Social Security Act.  (Dkt.
7-10 at 10-29.)  At step one, the ALJ found that Plaintiff had not engaged in
substantial gainful activity during the period from his alleged onset date of May 23,
2017, through February 1, 2022.  (Id. at 13.)  At step two, the ALJ found that
Plaintiff had the following severe impairments: depression; anxiety; and alcohol
abuse.  (Id.)  The ALJ also determined that Plaintiff had the non-severe impairments
of status post stroke, carotid artery disease, status post occlusion, stenosis of the
right carotid artery, transient loss of right eye vision, hypertension, and obesity.  (Id.
at 14-15.)  At step three, the ALJ determined that Plaintiff did not have an
impairment or combination of impairments that met or medically equaled the
severity of any of the listings in the regulations.  (Id. at 17.)

The ALJ assessed Plaintiff's RFC and concluded that he could perform a full
range of work at all exertional levels but with the nonexertional limitations that "he
was able to understand, remember, and carry out simple and some detailed
instructions; and he was able to adapt to normal work related changes in most
routine work like settings."  (Id. at 20 (bold omitted).)  The ALJ found that
Plaintiff's "medically determinable impairments could reasonably be expected to
cause the alleged symptoms; however, the [Plaintiff's] statements concerning the
intensity, persistence, and limiting effects of these symptoms are not entirely
consistent with the medical evidence and other evidence in the record for the

reasons explained in this decision."  (Id. at 22.)

Further, at step four, the ALJ found Plaintiff had no past relevant work.  (Id. at 27.)  At step five, the ALJ determined that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  (Id. (bold omitted).)  Specifically, the ALJ found that Plaintiff could perform the representative occupations of kitchen helper (Dictionary of Occupational Titles ("DOT") # 318.687-010) (approximately 120,000 such jobs in the national economy), floor waxer (DOT # 381.687-034) (approximately 118,000 such jobs in the national economy), and motor vehicle assembler, (DOT # 806.684-010) (approximately 239,000 such jobs in the national economy).  (Id. at 28.)  Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the Act from May 23, 2017, the alleged onset date, through February 1, 2022.  (Id.)

**V.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir.

6

1    1997)).  It is "relevant evidence which a reasonable person might accept as adequate

2    to support a conclusion."  Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at

3    1279).  To determine whether substantial evidence supports a finding, the court must

4    "consider the record as a whole, weighing both evidence that supports and evidence

5    that detracts from the [Commissioner's] conclusion."  Aukland, 257 F.3d at 1035

6    (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can

7    reasonably support either affirming or reversing that conclusion, the court may not

8    substitute its judgment for that of the Commissioner.  Reddick, 157 F.3d at 720-21

9    (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

10

11                                    **VI.**

12                                **DISCUSSION**

13          Plaintiff raises two grounds for relief.  First, Plaintiff contends that the ALJ

14    failed to provide clear and convincing reasons supported by substantial evidence in

15    the record for discounting his testimony about his physical and mental dysfunction.

16    (Dkt. 9 at 6-9.)  Second, Plaintiff contends that the ALJ erred by failing to reconcile

17    an apparent conflict between the assessed RFC limitations and the jobs identified by

18    the VE that Plaintiff could perform.  (Id. at 10-11.)  For the reasons set forth below,

19    the Court AFFIRMS the decision of the Commissioner.

20    **A.    The ALJ Properly Considered Plaintiff's Subjective Symptom**

21           **Testimony.**

22          In his first ground for relief, Plaintiff contends that the ALJ failed to provide

23    clear and convincing reasons to reject his subjective physical and mental symptom

24    complaints.  (Id. at 6.)  Specifically, Plaintiff contends that the ALJ did not

25    adequately address the reasons for discounting his physical complaints of "constant

26    dizziness," resulting from prior strokes and carotid artery disease, and chronic knee

27    pain.  (Id. at 7-8.)  Plaintiff also contends that the ALJ failed to provide clear and

28

                                        7

convincing reasons for discounting his mental complaints of disabling anxiety.  (Id.
at 8.)  Finally, Plaintiff argues that the ALJ improperly used evidence of Plaintiff's
activities of daily living to discount his subjective symptom complaints.  (Id. at 8-9.)

### 1.    Legal Standard.

When assessing a claimant's credibility regarding subjective pain or intensity
of symptoms, the ALJ must engage in a two-step analysis.  See Trevizo v. Berryhill,
871 F.3d 664, 678 (9th Cir. 2017).  First, the ALJ must determine if there is medical
evidence of an impairment that could reasonably produce the symptoms alleged.
See Garrison, 759 F.3d at 1014.  "In this analysis, the claimant is not required to
show that her impairment could reasonably be expected to cause the severity of the
symptom she has alleged; she need only show that it could reasonably have caused
some degree of the symptom."  Id. (internal quotation marks omitted).  "Nor must a
claimant produce objective medical evidence of the pain or fatigue itself, or the
severity thereof."  Id. (internal quotation marks omitted).

If the claimant satisfies this first step, and there is no evidence of malingering,
the ALJ must provide specific, clear and convincing reasons for rejecting the
claimant's testimony about the symptom severity.  See Trevizo, 871 F.3d at 678; see
also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony
regarding the severity of her symptoms only if he makes specific findings stating
clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d
880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on
affirmative evidence thereof, he or she may only find an applicant not credible by
making specific findings as to credibility and stating clear and convincing reasons
for each.").

In discrediting the claimant's subjective symptom testimony, the ALJ may
consider the following:

> (1) ordinary techniques of credibility evaluation, such as
> the claimant's reputation for lying, prior inconsistent

> statements concerning the symptoms, and other
> testimony by the claimant that appears less than candid;
> (2) unexplained or inadequately explained failure to seek
> treatment or to follow a prescribed course of treatment;
> and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal quotation marks

omitted).  Inconsistencies between a claimant's testimony and conduct, or internal

contradictions in the claimant's testimony, also may be relevant.  See Burrell v.

Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d

789, 792 (9th Cir. 1997).  In addition, the ALJ may consider the observations of

treating and examining physicians regarding, among other matters, the functional

restrictions caused by the claimant's symptoms.  See Smolen, 80 F.3d at 1284;

accord Burrell, 775 F.3d at 1137.  However, it is improper for an ALJ to reject

subjective testimony based "solely" on its inconsistencies with the objective medical

evidence presented.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th

Cir. 2009) (internal quotation marks omitted).

Further, the ALJ must make a credibility determination with findings that are

"sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

discredit claimant's testimony."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th

Cir. 2008) (internal quotation marks omitted); see Brown-Hunter v. Colvin, 806

F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible

must be sufficiently specific to allow a reviewing court to conclude the adjudicator

rejected the claimant's testimony on permissible grounds and did not arbitrarily

discredit a claimant's testimony regarding pain." (internal quotation marks

omitted)).  The ALJ must identify "what testimony is not credible and what

evidence undermines the claimant's complaints."  Brown-Hunter, 806 F.3d at 493.

Although an ALJ's interpretation of a claimant's testimony may not be the only

reasonable one, if it is supported by substantial evidence, "it is not [the court's] role

to second-guess it."  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

9

### 2.    Plaintiff's Subjective Symptom Testimony.

At the April 16, 2024 hearing, Plaintiff testified that he had his first stroke in May 2017, which left residual effects of dizziness and panic attacks. (Dkt. 7-10 at 45-46.)  He indicated that the dizziness happened "[a]ll the time, 24 hours a day." (Id. at 46.)  He had difficulty standing up without holding onto something because his head would "start . . . spinning," which only allowed him to stand for 10 minutes at a time and to walk a "couple hundred yards" before needing to sit down.  (Id. at 46-48.)  He testified that the dizziness happened regardless of whether he was sitting, standing, or talking on the phone.  (Id. at 47.)  He also experienced vision loss after the stroke from a blood clot behind his right eye.  (Id. at 48.)  He testified that the dizziness and blindness affected his ability to drive and do household chores like laundry, but he was able to cook his own meals and push a vacuum for a "couple minutes."  (Id. at 49-50.)  According to Plaintiff, doctors told him that that he could not work because he needed to "take it easy" and not lift anything heavy. (Id. at 50.)

Plaintiff also testified that he experienced panic attacks "every day" that lasted a couple hours to all day and caused him to be unable to sleep for three or four nights in a row.  (Id. at 51.)  When experiencing a panic attack, he would have to lay down in a dark room, but then would get "ocular migraine" headaches about once a week.  (Id. at 52.)  He took medication that "sometimes" helped, but other times he would take triple the dose and it "didn't do nothing."  (Id. at 52.)  He "never slept," remembering once staying up four nights in a row, which required him to have to lay down for a couple hours every day.  (Id. at 53.)  This caused him to be fatigued where he "couldn't think" and "couldn't function."  (Id. at 54.)  Two to three times per week, he struggled to get out of bed and would just watch TV all day.  (Id. at 54-55.)

Plaintiff also testified that he had a hard time concentrating and remembering

10

after the stroke.  (Id. at 55-56.)  He needed extra reminders about medications and appointments, and sometimes could not remember his actions, like if he had brushed his teeth.  (Id. at 56.)  He testified that he suffered from depression from his constant worrying about having another stroke.  (Id. at 57.)  He indicated that there had been no improvement since 2017, and it was only getting worse.  (Id. at 57-58.)

Regarding his physical ailments, Plaintiff testified that he had "constant" pain in his right knee.  (Id. at 58-59.)  He stated that the pain level was 10 out of 10 and he "could not walk" because the bone sometimes "pops out," causing him to have to sit and wait 24 hours for it to go back in.  (Id. at 59.)  He treated the knee pain with Ibuprofen and, though doctors told him he needed "total knee [re]construction," he did not receive any treatment from doctors between 2017 and 2022 because he "had enough problems" and gets anxiety seeing doctors, which causes his blood pressure to increase.  (Id. at 59-60.)

**3.    Analysis.**

The ALJ engaged in the two-step analysis required by Trevizo and found at the first step that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (Dkt. 7-10 at 22.)  However, the ALJ concluded at the second step that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Id.)  The ALJ discounted portions of Plaintiff's subjective symptom testimony by relying on inconsistencies between Plaintiff's testimony and the objective medical evidence, as well as Plaintiff's intermittent and conservative treatment history as to his purported ailments.  (Id. at 22-24.)

i.    Objective Medical Evidence.

First, the ALJ noted the lack of consistency between the objective medical evidence and Plaintiff's allegations of debilitating "anxiety-related symptoms," such

11

as daily panic attacks, inability to sleep, problems with concentration and memory, and depression from worry about having another stroke. (Id. at 22.) Specifically, the ALJ noted that Plaintiff had a sparsely documented history of mental health treatment, which generally showed "limited findings of anxious affect and mood" and unremarkable examination findings, including "normal eye contact, appropriate grooming, and normal insight." (Id. (citing Dkt. 7-8 at 281-82, 310; Dkt. 7-9 at 92; Dkt. 7-15 at 7, 11).) Thus, the ALJ concluded that there was "little to no additional objective psychiatric, psychological, or mental status findings that support the severity of symptoms related to panic attacks, anxiety, sleep problems, headaches, concentration and memory, or depression." (Id.) Plaintiff points to no medical evidence in the record that undermines the ALJ's findings.

Similarly, the ALJ noted the lack of consistency between the objective medical evidence and Plaintiff's allegations of debilitating effects from his "residual stroke symptoms," which included constant dizziness, vision loss, and the inability to do strenuous activity. (Id.)  The ALJ noted that Plaintiff received only "intermittent treatment" for his impairments of status post stroke and carotid artery disease, status post occlusion, and stenosis of the right carotid artery from April to September 2017 and, again, in March 2018 to June 2018. (Id. at 23.)

During the first period, Plaintiff went to the hospital on May 4, 2017, for treatment of right carotid artery stenosis, essential hypertension, hyponatremia, hyperlipidemia, and hypokalemia, but left the hospital the following day because he was "feeling better" and "wanted to go home." (Dkt. 7-8 at 56-57.)  At a follow-up visit in September 2017, Plaintiff reported doing "significantly better" with blood pressure under control and able to exercise regularly on the treadmill "without any difficulty," and an examination revealed he was "alert, in no acute distress and healthy appearing." (Id. at 310-11; Dkt. 7-9 at 20-22, 66-68.)  During the second period, Plaintiff was again hospitalized overnight and diagnosed with amaurosis

12

fugax of the right eye/transient ischemic attack, near complete occlusion of the right
internal carotid artery with thrombus, hypertension, and obesity.  (Dkt. 7-10 at 23
(citing Dkt. 7-8 at 291-307; Dkt. 7-9 at 15-19, 23-24, 28-30, 61-65, 69-70, 74-76,
135-295).)  However, in follow-up appointments in April, May, and June 2018,
Plaintiff was asymptomatic and reported that his blood pressure was "well-
controlled" and that he was doing well with "no recurrent symptoms."  (Dkt. 7-8 at
10-12, 56-58, 281-84, 289-90; Dkt. 7-9 at 7-9, 53-55, 109-10.)

      The ALJ also found that the objective medical evidence was inconsistent with
Plaintiff's claimed limitations with standing, walking, and lifting objects.  (Dkt. 7-
10 at 23-24.)  The ALJ found "no positive, objective physical evidence
demonstrating a varied ability to walk or stand, such as an antalgic gait or decreased
range of motion, motor strength, sensation, or reflexes of the lower extremities."
(Id. (citing Dkt. 7-8 at 17 ("He has equal and symmetric strength in upper and lower
extremities."); id. at 81 ("Joints and limbs grossly normal. . . . Motor strength
grossly normal."); id. at 282 ("normal gait"); id. at 296 ("5/5 muscle strength")).)
The ALJ specifically noted that, at a September 2017 examination, Plaintiff was
found to have "normal gait and balance," "strength is 5/5 throughout without focal
motor deficits," "sensation is grossly intact to soft touch throughout the upper and
lower extremities," "deep tendon reflexes are 2/2 and symmetrical," and the "range
of motion of the joints of the upper extremities and lower extremities [was] within
normal limits, bilaterally."  (Dkt. 7-8 at 48-51.)  Further, the ALJ found "no
objective evidence of a medical opinion from treatment providers" that Plaintiff was
physically "disabled or had limitations related to lifting."  (Dkt. 7-10 at 24 (citing
Dkt. 7-8 at 2-38, 52-329; Dkt. 7-9 at 2-342).)

      In light of this evidence, the Court concludes that the ALJ properly
discounted Plaintiff's subjective symptom testimony regarding his alleged mental
and physical limitations due to a lack of consistent clinical findings in the record.

See Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." (italics omitted)); Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); Social Security Ruling ("SSR") 16-3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . ."). As set forth above, there is substantial evidence in the record to support the ALJ's findings that Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence.

      ii.     Intermittent, Conservative, and Effective Medical Treatment

Second, in discounting Plaintiff's subjective symptom testimony, the ALJ emphasized the inconsistency between Plaintiff's testimony and the intermittent, conservative, and effective treatment Plaintiff received according to the medical record. (Dkt. 7-10 at 22-24.) Regarding Plaintiff's limitations from his anxiety disorder, the ALJ noted that Plaintiff was routinely "treated with prescribed psychotropic medications." (Id. at 22.) In June 2018, Plaintiff complained of "intermittent" anxiety attacks, but indicated that he did not want behavior therapy and was prescribed Lorazepam and told to "follow up as needed." (Dkt. 7-9 at 7-9.) In September 2020 and May 2021, Plaintiff's anxiety disorder was determined to be "stable," and Plaintiff was told to continue stress reduction, exercise, proper diet, and his prescribed medication was continued. (Id. at 92-95; Dkt. 7-15 at 8.) Plaintiff fails to point to other, more significant mental health treatment in the record.

As for Plaintiff's subjective complaints about physical limitations from status post stroke and carotid artery disease, status post occlusion and stenosis of the

14

right carotid artery, the ALJ found Plaintiff received "only intermittent treatment for these conditions," as described previously, from April 2017 to September 2017 and, again, from March 2018 to June 2018. (Dkt. 7-10 at 23.) During those brief periods, the ALJ noted that Plaintiff's conditions were "effectively treat[ed] with prescribed medications with little to no evidence of residual symptoms as alleged by [Plaintiff]." (Id. (citing Dkt. 7-8 at 281 ("advised to have conservative treatment"; "taking medication for hypertension and aspirin and Plavix for carotid obstruction"; "currently asymptomatic"); id. at 284 ("Currently, [Plaintiff] is on maximal medication management and is asymptomatic. Because he is doing well on medical therapy, no further intervention . . . is indicated"); Dkt. 7-9 at 119 ("Neurologist was consulted"; "Dr. Hijazin greed with the plan"; "[Plaintiff] discharged home on aspirin and Plavix"; "increase atorvastatin to 80 milligram"; "Continue his blood pressure medicine"; "his symptoms w[ere] completely resolved in less than 1 hour"; "Patient currently completely asymptomatic")).) Thereafter, Plaintiff received "no further medical treatment for carotid artery disease, hypertension, or other related symptoms until over two years later in 2020," when he presented as a new patient for a general examination to establish primary care with a physician, at which time his examination results were generally unremarkable. (Id. (citing Dkt. 7-9 at 90-96).)

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). Further, an unexplained or inadequately explained failure to seek treatment is also a valid basis for discounting a claimant's credibility. Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007). Here, there is only sparse and intermittent medical evidence during the relevant period that Plaintiff sought treatment for his alleged mental and physical impairments. Plaintiff has not offered any explanation for his failure to seek more consistent and aggressive treatment for the claimed debilitating symptoms testified

to before the ALJ.  Moreover, when Plaintiff did seek medical assistance, the records show that his residual symptoms were generally controlled with medication and, in some instances, he refused further interventions such as behavior therapy. See Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling.").

In short, the Court concludes that the ALJ properly relied on evidence of intermittent, conservative, and effective medication treatment to discount Plaintiff's subjective symptom testimony.  See Roquemore v. Comm'r of Soc. Sec., 374 F. App'x 693, 695 (9th Cir. 2010) (approving ALJ's rejection of subjective symptom testimony where "the ALJ noted that treatment of [the plaintiff's] impairments had been conservative in nature, consisting of only medication and physical therapy"); Tommasetti, 533 F.3d at 1039-40 (finding subjective symptom allegations undermined because Plaintiff responded favorably to conservative treatment including physical therapy and medication).

iii.   Daily Living Activities.

Plaintiff also contends that the ALJ erred in citing Plaintiff's daily living activities as a reason to discredit his subjective complaints.  (Dkt. 9 at 8-9.)  Plaintiff argues that his ability to perform general household chores like shopping, bathing, and cooking simple meals does not translate into an ability to function in a competitive work environment.  (Id. at 9.)  In her decision finding Plaintiff was not disabled, the ALJ noted that Plaintiff indicated to the consultative psychological examiner that he lived alone, but "was able to dress, bathe, shop, and do household chores, and he drove."  (Dkt. 7-10 at 26.)  Nowhere in the opinion, however, did the ALJ indicate she was discounting Plaintiff's subjective symptom complaints

16

because of Plaintiff's ability to complete these activities.  Rather, the ALJ mentioned these activities only once and in the context of determining the persuasiveness of the findings of the consultative psychological examiner—not in her analysis of Plaintiff's subjective complaints.  Just as a federal court "may not uphold an agency's decision on a ground not actually relied on by the agency," Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012), the Court will not find reversible error where the ALJ did not clearly rely on an unsupported ground.  Here, because the ALJ did not rely on Plaintiff's daily living activities in discounting Plaintiff's testimony, the Court finds no error.

Nevertheless, regardless of whether Plaintiff's daily living activities were inconsistent with his alleged limitations, the Court concludes that the ALJ provided other specific, clear and convincing reasons that are supported by substantial evidence in the record for discounting Plaintiff's testimony regarding the debilitating effects of his symptoms—i.e., that his allegations were not consistent with the objective medical evidence, that he received only conservative treatment for his alleged impairments, and that his symptoms were effectively controlled with medication.  As such, remand is not warranted.  See Rollins, 261 F.3d at 857 (rejecting "argument that the ALJ improperly discounted [claimant's] testimony" where "[t]he ALJ gave clear and convincing reasons for discounting portions of [plaintiff's] excess pain testimony, and those reasons were supported by substantial evidence.").

**B.**     **The ALJ's Determination At Step Five Is Supported By Substantial Evidence In The Record.**

In his second ground for relief, Plaintiff's contends that the ALJ failed to resolve a conflict between the VE's testimony that there were a significant number of jobs in the economy that Plaintiff could perform and the assessed RFC limitations by the ALJ.  (Dkt. 9 at 10-11.)  Specifically, Plaintiff argues that the VE's testimony

17

conflicted with the DOT because two of three occupations identified by the VE require Level 2 reasoning and the ALJ included a limitation that Plaintiff could "understand, remember, and carry out simple and some detailed instructions." (Id. at 10.)  Defendant contends that there is no conflict between reasoning Level 2 and Plaintiff's RFC and, thus, substantial evidence supports the step five determination. (Dkt. 13 at 9-10.)

### 1.    Legal Standard.

The ALJ must determine at step five if work exists that the Plaintiff can perform considering Plaintiff's determined vocational profile.  See 20 C.F.R. § 416.920(a)(4)(v).  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.  See 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2), and 416.912(b)(3).  To meet this burden, the Agency may rely on the testimony of a VE.  See Tackett, 180 F.3d at 1101.  If the ALJ relies on a VE, however, the ALJ must ensure the consistency of the VE's testimony with the DOT by asking the VE about potential conflicts.  See SSR 00-4p; see also Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007).  If an expert's opinion regarding ability to work conflicts with, or seems to conflict with, the requirements listed in the DOT, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide the claimant's disability.  See Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016).

### 2.    The Vocational Expert's Testimony.

At the April 16, 2024 hearing, the ALJ presented the VE with a hypothetical that included all the limitations found in the RFC determination, including that the hypothetical person is "able to understand, remember, and carry out simple and

some detailed instructions," and had no past relevant work.  (Dkt. 7-10 at 62.)  In response, the VE testified that the hypothetical person could perform the occupations of kitchen helper (DOT # 318.687-010) (approximately 120,000 such jobs in the national economy), floor waxer (DOT # 381.687-034) (approximately 118,000 such jobs in the national economy), and motor vehicle assembler, (DOT # 806.684-010) (approximately 239,000 such jobs in the national economy).  (Id.) The VE confirmed that his testimony was "consistent with the DOT."  (Id. at 65.)

### 3. Analysis.

Based on a VE's testimony, the ALJ concluded that Plaintiff was capable of performing at least three jobs: kitchen helper, floor waxer, and motor vehicle assembler.  (Id. at 27-28.)  According to the DOT, the jobs of kitchen helper and motor vehicle assembler require a GED Reasoning Level of 2.  See DOT # 318.687-010, 1991 WL 672755 (kitchen helper); DOT # 806.684-010, 1991 WL 681470 (motor vehicle assembler).  However, the job of floor waxer only requires a GED Reasoning Level of 1.  See DOT # 381-687-034, 1991 WL 673262 (floor waxer).

There are six GED Reasoning Levels that range from Level One (simplest) to Level Six (most complex).  DOT App. C, § III, 1991 WL 688702. The lowest two levels are: as follows:

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

Id.  Plaintiff argues that the ALJ erred because the RFC limitation that Plaintiff is only "able to understand, remember, and carry out simple and some detailed instructions" means he is only capable of performing Level 1 reasoning jobs—such as a floor waxer.  (Dkt. 9 at 10.)  Plaintiff further argues that the VE's testimony

does not support the ALJ's determination that there was a significant number of available jobs for Plaintiff in the economy.  (Id. at 10-11.)  The Court disagrees.

The DOT's Level 2 definition specifically provides that a job with that reasoning level requires the ability to understand and carry out "detailed" instructions, with the specific caveat that the instructions be "uninvolved—that is, not a high level of reasoning."  Meissl v. Barnhart, 403 F.Supp.2d 981, 985 (C.D. Cal. 2005).  Here, Plaintiff does not challenge the ALJ's determination that Plaintiff can understand, remember, and carry out "some detailed instructions."  (Dkt. 7-10 at 20.)  As such, even considering the ALJ's RFC limitations, Plaintiff plainly meets the reasoning standards of Level 2.  See Truong v. Saul, 2019 WL 3288938, at *5 (S.D. Cal. July 19, 2019) (finding RFC limitation to "detailed non-complex instructions" closely tracks Level 2 reasoning requirement for carrying out "detailed but uninvolved" instructions); Vanessa R. v. Comm'r of Soc. Sec., 2019 WL 1586867, at *3 (W.D. Wash. Mar. 28, 2019) (finding RFC limitation to "'detailed but not complex' instructions is most nearly synonymous with 'detailed but uninvolved' instructions" in Level 2 reasoning); see also Xiong v. Comm'r of Soc. Sec., 2010 WL 2902508, at *6 (E.D. Cal. July 22, 2010) ("Courts within the Ninth Circuit have consistently held that a limitation requiring simple or routine instructions encompasses the reasoning levels of one and two.")

Accordingly, the Court concludes that there is no conflict between the ALJ's limitation on Plaintiff's ability to understand, remember, and carry out simple and some detailed instructions and the reasoning levels for all jobs identified by the VE. Accordingly, the ALJ's step five determination was supported by substantial evidence in the record.

\\

\\

# VII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.


DATED: December 17, 2025          _____

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE